# CIRCUIT COURT OF BALTIMORE CITY.

Filed May 18, 1895.

PETER STUART ET AL.

VS.

JOHN THOMAS ET AL.

*Messrs. Price & Stuart* for plaintiffs.

*Wm. Pinkney White* for defendants.

DENNIS, J.—

The plaintiff claims the right to the use of the word "granolithic" as a trademark for his improved concrete pavement, and the bill is filed to restrain the defendants from the further use of that word in connection with certain concrete pavements of their own manufacture. It avers that the word "granolithic" is a novel and arbitrary term, adopted by the plaintiffs as early as 1881, at which time the patent for their pavements was issued, and has been used by them continuously since then for the purpose of designating the pavements of their manufacture according to the peculiar methods set out in the letters patent, and to distinguish the same from pavements compounded and constructed by others.

The only defense made by the answer is to deny the plaintiffs' right to the exclusive use of the said word as a trade-mark, the claim being that it is a recognized English word, generic in character, and used to describe the kind of pavement made and not to indicate the origin of the thing con-

structed, and therefore belongs to the public and cannot be lawfully appropriated by the plaintiff as a trade-mark.

So far as the testimony shows, the word was not known until its use by the plaintiff in 1881. It is found in none of the standard dictionaries; the word nearest approaching it being "granulitic," relating to granulite," found in the Century dictionary, perhaps in some later editions of some other authorities; but granulite is a well-known metal, and clearly "granulitic" is altogether a different word, and with an entirely different meaning from "granolithic." The latter considering its manifest derivation, means broken stones, and when applied to a pavement would suggest that broken stones entered into it, but nothing more; the manner of construction, compounding and laying, and the other features covered by the plaintiff's patent would not even be suggested. To this extent it is an arbitrary term, which the plaintiffs originated and selected for use upon pavements of their own manufacture, and at the most is merely suggestive of the kind of pavement. But this is not enough to invalidate it as a trade-mark; for it may be considered as now finally settled that words which merely suggest the composition, quality or characteristic of the article, can be legally appropriated for trade-marks. Keasley vs. Brooklyn Chemical Works, 142 N. Y. 467, and cases cited.

In that case the contest was over the use as a trade-mark of the word "bromocaffeine." The article made by the plaintiff called "bromo-caffeine" was found to contain caffeine, bromide of potassium and other substances. The Court said that "bromide might refer to bromide of potassium, or to bromide of sodium, or to any other bromide, or to bromine," and they upheld the trade-mark as coming within the doctrine of those cases which have protected the words of the trade-mark, "although they suggested, more or less, the composition, quality or characteristics of the article." The present case seems to me to fall clearly within the principle thus announced, and I think the trade-mark of the plaintiff a valid one, and that he is entitled to the relief asked.

It was also contended for the defense that the word, subsequently to its adoption by the plaintiff as a trade-

mark, has come into such general use by the public to denote all kinds of pavements made of broken stone, sand and cement, as to make it public property; but this is not the law. It is well settled that the inventor of an arbitrary or fanciful name, having chosen it as a trade-mark and applied it to articles of his manufacture, is entitled to protection for it, notwithstanding the subsequent use by the public of the word as descriptive of the article. Celluloid Manf. Co. vs. Read, 47 Fed. Rep. 712, 32 Fed. Rep. 94; 93 N. Y. 95.

Nor does the fact that the defendant used the trade-mark always in connection with his own name, and made no attempt to sell his pavements as those of the plaintiff make any difference. The plaintiffs, having educated the public to ask for their pavements by their trade-mark name, have the right to insist that others shall not use the name; for were it otherwise inferior articles might be manufactured by others and sold under the trade-mark name, and then the reputation of the plaintiffs' work would be injured and the value of his trade-mark destroyed. Roberts vs. Sheldon, 18 Off. Gaz. 1277; 82 N. Y. 519.

I will sign a decree granting the injunction.